oral argument, 15 minutes per side. Mr. Spangler for the appellant. Morning, may it please the court. Nick Spangler on behalf of the state of Tennessee and the respondent warden. I'd like to request three minutes of rebuttal time please. In this case, for the second time, the district court has asked for a rebuttal time of three minutes and has erred in granting habeas relief because the court of criminal appeals reasonably determined that trial counsel was not ineffective in declining to request a jury instruction on circumstantial evidence in this case. The previous error was committed as a result of the district court reversing on the basis of sufficiency of the evidence which this court reversed and remanded for further proceedings. As an initial matter though, I have to mention that the court of criminal appeals determination that a circumstantial evidence instruction was not warranted is a matter of state law that's simply beyond the purview of the habeas court. Opposing counsel encourages the court to sort of dive into the web of Tennessee law surrounding this issue, but it's the state's position that that's simply beyond the purview of the court. And in that case, the court considered whether or not counsel should have requested a specific instruction and the court went on to hold essentially that the state court's determination that an instruction wasn't warranted was only relevant as to the prejudice prong of the ineffective assistance claim before the court. They essentially said we can't peer behind the reasoning of the state court as to whether or not that instruction was warranted. We have to accept the state court's determination about what jury instructions were or weren't warranted and it's only relevant to the prejudice prong. Does that apply even if the issue has constitutional implications? Certainly, Your Honor, and it is obviously the issue before this court is the ineffective assistance of counsel claim, which is a constitutional issue. Behind that is this underlying question of the jury instruction and that's why sort of as an aside or an alternative argument in our brief, we address the merits of whether or not the jury instruction should have been included and certainly as a matter of federal constitutional law, that jury instruction was not required because it's always been the federal law that or at least I think since the Holland case, that circumstantial evidence and direct evidence, there's essentially no distinction, at least as of the Jackson decision. There's no distinction between that circumstantial evidence and direct evidence. Admittedly, it took Tennessee law a little while to catch up to that and to sort of get in line with the federal standard. It was earlier more restrictive than that, but there was sort of a period of time where if counsel requested this instruction, if the proof was both direct and circumstantial and counsel requested this instruction, it was required to be given. At the same time and at the same time as the petitioner's direct appeal in this case, there was law essentially acknowledging that Tennessee's law was commensurate with the federal standard, which drew no distinction between the circumstantial evidence and direct evidence. Essentially that in cases involving both circumstantial and direct evidence, there's no need to exclude this, the language is exclude every reasonable hypothesis but guilt. What is the direct evidence here? Sure, the direct evidence is essentially everything leading up to this crime occurring. Basically this crime resulted from the victim taking some drug buy money from the petitioner in order to go buy some cocaine. Apparently that money was never returned. The petitioner in this case became angry. She started looking for the victim. She enlisted other people to look for the victim. She made contact with a couple of accomplices who actually detained the victim and held him until... Why is that direct evidence as opposed to circumstantial evidence? The question is, did she murder the victim? Sure. The state would acknowledge that as to the mental element in this case, as with many other cases, the only evidence as to her requisite mental state was circumstantial evidence, which was not uncommon. But the case law even in Tennessee, it doesn't draw that distinction to say just because circumstantial evidence is what proves the mental element. It says if there's this mix of direct and circumstantial evidence, period, then the instruction itself is not required unless counsel requests it. So both as a matter of Tennessee and federal law, the instruction was not required without the request. What role counsel does the... It was interesting here, the defense was, I wasn't even there, right? Correct. And this defendant said, you talk about this shooting all you want, I wasn't even there. So if that's the defense, does that affect the need to seek an instruction about circumstantial evidence when the defense is that I wasn't even there? Sure. Like you said, the defense was all about alibi testimony. There were family members that came and essentially said the victim, the petitioner and her co-defendant were at our house, they were nowhere to be found. Obviously in this case the jury completely discredited that testimony. They essentially went with the testimony of the eyewitnesses at the scene who said the petitioner showed up with her co-defendant, confronted this victim about the money that he stole, and the co-defendant pulled out a gun and shot the victim. But there was also testimony from another eyewitness who said it was actually the petitioner who possessed a gun and assaulted the petitioner. But as to your question as to whether or not that instruction matters... That's your answer to this. The fact that the defense obviates circumstantial evidence, it shouldn't affect the matter. I don't think it affects this matter. I think as to the question of the harmless error analysis as to the other claim about whether or not the violation of the right to testify, I think it goes as to that because her post-conviction testimony was completely inconsistent with the alibi theory presented at trial. Essentially she said at trial she had all these witnesses to say I wasn't there, and at post-conviction she said well, I snuck out of the house and was at the scene of the crime to see this aftermath of the shooting. And certainly it's relevant as to that claim because obviously the alibi testimony would have completely nullified her credibility if she had testified to that effect, and her testimony to that effect would have nullified her alibi theory. So they were sort of mutually exclusive. So as to that claim it is relevant, but I guess I'm not certain how it would be relevant to the circumstantial evidence claim. But I do want to draw the court's attention to the Coulter decision because I think it sort of highlights the state of the law around about the time that this case was on direct appeal. And certainly with respect to the cases cited by the opposition, and we acknowledge those cases, the Mott's decision, the Thompson decision, but at the same time there's this Coulter decision wherein the Court of Criminal Appeals held, quote, it is not necessary for a conviction that a defendant's innocence be excluded from every reasonable hypothesis in a case involving both direct and circumstantial proof. Here this case rests at least in part on direct evidence, and indeed substantial direct evidence. And I think this Court already pointed that out in the previous appeal with regard to the sufficiency of the evidence. There is substantial evidence supporting guilt in this case, at least with regard to all the circumstances leading up to the crime and the actual shooting itself, that she was there, she had the motive to commit this crime. It's only with regard to the mental element that the question of circumstantial evidence comes up. So the state's position is that given the state of the law in Tennessee, this instruction was not required, and even if counsel had requested it, and even if the trial court had sort of peered into the law at the time and made the decision that yes, we better go ahead and instruct this, even though the law was arguably in flux at this point in time, even if the trial court had instructed it, our position is that there's no reasonable probability of a different result at trial given the other evidence of guilt in this case, and that being strong direct evidence. Again, we just have to point to the circumstances. The jury resolved the petitioner's guilt based on the reasonable doubt standard as instructed by the trial court. She was angry with the victim because of this drug buy money. She sought the victim out, enlisted others to do the same. She sang, hold this person for me, I'm coming. They indeed held him. She drove to the scene of the crime with the co-defendant. She was the one with the motive to retaliate, and on arrival she confronted the victim about her money. And again, the witness testimony is a little bit different. Some say that the co-defendant pulled out the gun and shot, but there's at least this other sort of alternative testimony that she was the one that possessed the gun and actually assaulted the victim. So given all that testimony... Who was the witness who said that she shot the victim? I'm sorry, the testimony from that witness, and I can't recall her name, was not that she shot the victim. I believe it was that she saw the victim, she saw the petitioner with a gun assault the victim, I think was the language. Because I thought the testimony was that the male shot the victim. There was testimony to that. There was testimony to that effect, but there was also this alternative witness, and I'm sorry, I can't remember. It was a lady I remember, but I can't remember her name off the bat. But her testimony was that she did see the petitioner with a gun and that the petitioner assaulted the victim. The assault could be hit her. That's correct, Your Honor. It was ambiguous with regard to that. It was not that she shot the victim. It was that she had a gun and she at least assaulted the victim. But given that, the State's position is that even if we jump through all these hoops, that if trial counsel had requested it, if the law in Tennessee at the time would have required the instruction to be given, that nonetheless there's no reasonable probability that this would have changed. Do we have to at some point really look at the final argument of both of the lawyers to see what the theory was of the State as to why she was guilty in her defense in order to understand what roles an instruction on circumstantial evidence might have played? Certainly, Your Honor, and I think, as pointed out by Judge Cook, I think the defense's theory, it was an alibi theory of defense. As for the State, and the defense pointed out, there's no evidence that she said, I'm going to shoot you now and then did it. I mean, there's not that direct evidence as to her mental state. But the State's theory is that, look, she was the one with the motive to retaliate against this person. He had her money. She was sort of the one driving this whole encounter and this whole confrontation. And as a result of that, referentially, she was the one with the motive to commit this first crime. Also, isn't circumstantial evidence frequently used to maintain or convince the jury of some positive fact, not a negative fact? That's correct, Your Honor. And I think that was the goal of the State here. It was the direct evidence of her actions with the co-defendant, but the direct evidence of those actions sort of transformed into circumstantial evidence as to her intent or motive. Or not even her motive, but her specific intent as to the first-degree murder. So I think that was the sort of positive fact that was trying to be proved by the State with all the direct evidence showing her involvement leading up to the offense. I'm close to being out of time, and I briefly touched on the harmless error argument with regard to the right to testify. I think I sufficiently covered that. But in sum, we just respectfully ask that you reverse the District Court with regard to its determination as to the ineffective assistance of counsel claim as to the jury instruction, but affirm the District Court with regard to the State's harmless error determination as to the right to testify claim. Thank you. Thank you. Good morning. I'm Paul Boutte with the Federal Public Defender's Office along with Sumter Camp on behalf of Tabitha White. Before getting to the discussion of Strickland, I'd like to quickly emphasize four points about both the facts and Tennessee law that I think help to clarify some of the questions that the members of the Court have previously asked. Point number one is that Tabitha White, based on the State's theory, was guilty only because on a theory of criminal responsibility. And that's, as Judge Cone, as you recognize, that's the prosecution's closing argument at page ID 882 and 883. The State's theory, and a quote from the State, quote, Ms. White did not shoot the gun. So they acknowledge in their closing argument that Ms. White was not responsible for actually killing the victim, but that she was only being accused and they were asking for a conviction based upon a theory of criminal responsibility. They admitted there was no direct evidence she actually killed. Point number two is that under Tennessee law, as recognized by the Court of Criminal Appeals and by this prior decision, for Ms. White to have been criminally responsible for the conduct of Mr. Robbins, she had to have had the same intent as Mr. Robbins. She had to have been a criminal. And so the evidence of her intent to kill was all circumstantial. Sure, there was evidence that she was angry. Sure, there was evidence that she was looking for her money. But there was no direct evidence that she intended to kill. And that was really the point that was made in the closing argument by the Defense Counsel. The Defense Counsel said there's no evidence in this. What value would it have been to her had the instruction on circumstantial evidence been given? It would have been of extraordinary value because the closing argument of the Defense Counsel was that there's no direct evidence that she intended Robbins to kill this individual. And so based upon both his argument, the Defense Counsel's argument, as well as the closing argument of the prosecutor, who in 882-883 also says there are two ways you can convict her. You can convict her one, of having the same intent and finding her guilty of being criminally responsible for first-degree murder. But you can also, on page 883, the prosecutor says, but you know, you can also convict her of facilitation of first-degree murder if you have a question about her intent. So with that instruction, what the jury could have done was it could have relied on other reasonable hypotheses or reasonable theories about what actually happened. Other theories were argued to the jury, right? That's correct. I just don't understand. Previously, this court found there was sufficient evidence to convict her. That's correct. Right? Yes, sir. But the point is, and maybe I can direct you to the supplemental authority that we filed on June 4th, the Fourth Circuit case of Lee v. Clark, which I think really gives a great analytical framework to answer your question. There, the Fourth Circuit granted habeas relief in a similar situation. And what the Fourth Circuit said there was, you can make arguments all you want to, but if you don't have an instruction whereby the jury can take advantage of that argument and give credence to your argument and acquit the defendant, then it's of no use. And that's essentially what happened here. So what you had was defense counsel saying they don't have any direct evidence that she intended that this man be killed. Yet the problem was when the jury was considering whether or not she was guilty of first-degree murder, they were not able to consider the reasonable hypotheses or other reasonable theories that she didn't intend, that as Judge Martin said in his dissent, for instance, that she just intended to get her money back. She was just mad with the guy. She had no idea that this guy was going to pull out a gun and shoot him. Why couldn't the jury consider that given the instructions that were given? Well, the reason they weren't able to consider that is because they did not have the instruction that they could acquit her based upon the other reasonable theories that she didn't have the intent. They weren't given that instruction. What were they instructed vis-a-vis intent? Well, they were instructed that to be convicted she had to have had the same intent as... This was an intent to commit murder. That's correct. Or that she intended Robbins to commit murder. She knew that Robbins was going to commit murder and she intended that. Well, she had to have intended that, but the point was she could have been acquitted based upon the circumstantial evidence instruction because that instruction would have said, but if there are other reasonable theories or reasonable hypotheses that she didn't have that intent, then you must acquit. So with that additional instruction, that would have given under Tennessee law an additional basis for acquitting her separate and apart from the instruction that was given. So why isn't this a matter of state law? Well, because first of all, the issue that's before the court is a Strickland question. And the question is whether counsel was deficient for failure to request the instruction that was available under state law. But the state says it wasn't necessary under state law. Well, let me address... Supposedly, if they are right, don't you lose? Well, they're not right about that. And the reason why I think we need to look at the Court of Criminal Appeals opinion specifically. The Court of Criminal Appeals never addresses the question of whether counsel was deficient for failing to request the instruction. All they say is sort of in this general sense. They essentially address a state law question, which is if you don't ask for it, are you entitled to it? To which they say no. But that's not the question that was before the court, and that's before this court, which is if counsel had requested the instruction, would it have been required? And the answer is yes, it would have. And you can see the problem with the state's argument when you look at the Court of Criminal Appeals decision. They don't talk about Mons. They don't talk about Thompson. They don't talk about Strickland. So all the Court of Criminal Appeals does is say, in a general sense, because you didn't request it, because there was some direct evidence, you're not entitled to it. But that's not the question. The question is, under Strickland, was counsel deficient for not requesting the instruction that clearly had to have been given under Mons and Thompson, which even the state filing has conceded in their reply brief. That's the law in Tennessee. That was the law that applied to her case. And so under those circumstances, what the state court said about whether you're entitled to instruction or not, they never answered the first question, the first prong of the Strickland question, which was, was counsel deficient? And clearly counsel was deficient when counsel was arguing in closing argument that there's no direct evidence, but then didn't ask for the instruction to be able to have the jury take advantage of that. That's clearly deficient performance. Did the state court answer the second part of Strickland? Was it prejudicial? They did answer that, but very briefly. Don't we need to defer to them on that? You don't need to defer to them on that, because it's unreasonable, as we've argued. And I want to make a few points just about the prejudice that existed under Strickland, and also the unreasonableness of the state court decision. And as I said, I think when we talk about reasonableness of a state court decision, I think looking at the case, there's an excellent analysis there. But in terms of the prejudice to Tabitha White, there is a reasonable probability that a jury could have acquitted her of the greater offense, and as the prosecutor argued, maybe have convicted her of the lesser offense of facilitation, because there were, one, there were other theories upon which a jury could have concluded that she wasn't guilty of the greater offense, but of the lesser offense. Two, we see the divide, even among the federal judges who reviewed this case previously, about how this was a close case, about whether there was intent to kill. But point number three, I think when you look at the prosecutor's argument, the prosecutor's saying, well, she may be guilty of facilitation on the one hand, or she may be guilty of first-degree murder. Even the prosecutor recognized that this was a close case between facilitation and first-degree murder. So that's where we have the prejudice. You're saying that you think the state court was wrong. You're saying you think the state court was wrong on its prejudice analysis, but don't we have to say that it was unreasonable? That's correct, and that was the next point I was getting to. I was explaining why they were wrong, and so why she would win under Strickland. And I would direct the court, like I said, to Lee, because Lee, I think, does a good analysis of this. But all the state court did was they just said, there's no prejudice, but they didn't do any analysis of it. And so, as we've cited in our brief, there's Porter v. McCollum from the United States Supreme Court. There's Peoples v. Laffler from this court, and there's also Lee v. Clark from the Fourth Circuit. And the language that the courts used in those cases include, like in Porter, they say that the state court did not consider, essentially, the relevant evidence or the relevant circumstances. The Supreme Court also said how the state court discounted entirely the relevant circumstances. That's exactly what happened here. All they said was, there's no prejudice, but they didn't take into account the very types of considerations taken into account by the district court here, both initially and in the most recent decision, as well as what we've argued in our brief and what, essentially, the theories that Judge Martin recognized in his dissent previously. Peoples talks about it's an unreasonable decision if the state court ignores the extent to which there's relevant evidence or there are relevant circumstances that entitle somebody to relief. That's exactly what happened here. Lee v. Clark uses the language, turned a blind eye to it. You say they didn't recognize it. I'm not sure why you say that. You said they reference it. Is that completely ignoring? We just don't have a detailed rationale. Well, you certainly don't have a detailed rationale, but under the ADPA you have to look at what the reasoning is. Is that true now in light of recent Supreme Court habeas cases, or don't we have to give the benefit of the doubt to silence on the part of the state court? Well, that's a very interesting question because Justice Ginsburg just wrote a concurrence and a denial of certiorari this past Monday in a case called Hitson. And there's some debate about that, but the answer, as Judge Ginsburg and Justice Sotomayor made clear, is that if... That's not the majority opinion. No, I agree. I'm not saying that it is the majority opinion, but all I'm saying is their analysis is correct. And what they say is if there is no opinion written by the court, then you can look beyond it and try to see if there are any reasonable bases. But when there is an opinion, you have to look at what they actually say. You can't look beyond the face of the opinion. And that only makes sense. And they cite cases like Porter and it aligns with the majority, so that we have to consider it. It absolutely does. It aligns? What they said in concurrence or dissent... They said it in concurrence. I'm more interested in what the majority said since that... Oh, I'm sorry. It was a concurrence and a denial of certiorari. Gotcha. I'm sorry. I didn't... I'm sorry. No, I'm sorry. That was my fault. I wasn't clear about that. But I guess my only point about that is when there is a written opinion, and that's what Porter says, that's what Wiggins says, that's what Oren Pilla says, you have to look at the analysis of the court, which is what the Fourth Circuit did in Lee, which is what this court did in Peoples, which is what the Supreme Court did in Porter. And you have to look at the actual analysis. So if the court says, you know, we deny relief because it just doesn't make any... It makes no difference, but without any analysis, well, if there are all these facts and circumstances that haven't been taken into account of, then that could be unreasonable. And that's really what all these courts say. And that's the situation here. What we have here is essentially a one-sentence denial that says there's no prejudice, but the court has not... The state court took into account none of these circumstances about the circumstantial evidence, about the fact that she didn't intend to kill, about the fact that she never said she intended to kill. As Judge Coney indicated, it takes into account no consideration of the closing arguments of counsel, which, as you recognize, are critical facts that need to be considered if you're going to try to make a reasonable analysis as to whether or not the decision is correct. And in this case, it wasn't correct. I would just like to make one other comment. The state doesn't stand for the proposition the state says it stands for. Coulter, when you actually read it, Coulter was the situation where, number one, the petitioner, the defendant there, actually got a circumstantial evidence instruction. He was asking for a different one or what he thought was a better one, and the court said, you got your circumstantial evidence instruction. That's all you're entitled to. So when the state's saying you're not entitled to circumstantial evidence instruction, Coulter actually proves our point, not theirs. And what's also interesting is Coulter cites a couple of cases. The Dumas case, which is a 1995 Tennessee criminal appellate Lexus 823, and Schaefer, which is 973 Southwest 2nd, 269. And those are both cases in which the state courts of Tennessee concluded that, based upon the circumstantial evidence of intent, that there was only circumstantial evidence of intent versus circumstantial evidence of actually committing the offense. That's not true, because Schaefer granted the guy relief on a sufficiency claim, as did Dumas, when there was not sufficient evidence to establish intent given the fact that there was only circumstantial evidence. So Tabitha White has been granted relief by the district court. She did not receive a fair trial. She didn't get the proper instructions, as in Lee versus Clark. That's what she's entitled to. She's entitled to a fair trial at which the jury can properly consider what offense she's actually guilty of, whether it's first degree murder under proper instruction, facilitation, or some other offense. She hasn't received that trial. The district court was correct. She's serving a life sentence in violation of the Constitution, and the district court was correct in granting relief. Was there an instruction given on allowing the jury to convict for facilitation here? Yes, there was. There was an instruction on first degree murder, facilitation of first degree murder, second degree murder, and facilitation of second degree murder. So her counsel could, and I assume did, argue that if the jury thought she was involved in some fashion, they should convict of a lesser offense? Well, that was one of Lee's possibilities. But, as I said, the problem was without the instruction, the reasonable hypotheses, the reasonable theories that she didn't have the intent couldn't be taken into account. That's the lesson of the Lee case. Thank you very much. I'll try to be brief. I think the court makes a good point in looking at the lesser includeds because the jury was properly instructed, as Judge Cook pointed out, as to both the reasonable doubt standard and that that reasonable doubt standard must apply to the requisite mental state. And the jury did just that. And in doing so, they essentially rejected all those other reasonable hypotheses, those being those lesser included offenses. They looked at those, they considered those under the appropriate standard of review, and rejected them. I wanted to it was Witness Marion Tucker. It was actually Co-Defendant Robbins' witness. And she testified that she saw the petitioner, quote, assault the victim over $10, and she said that the woman who asked where my $10 at was holding a gun. So that's the testimony that the state was relying on. And that's referenced in the appellate court's opinion. But I thought there was an assault in terms of a fight, like a fist fight type of thing before the shooting. I don't believe that's correct. I think it was The assault is one in the same event as the shooting? I believe so. And again, the testimony was a little bit, I don't want to say inconsistent, but one group of folks who were there were saying they just walked up, the Co-Defendant pulled out a gun. She said, where's my money at? And the Co-Defendant pulled out a gun and shot. Of course, Robbins' witness is the one who sort of palpates the petitioner a little bit more by saying that she had a gun and actually committed an assault as well. So it sort of makes sense that it's Robbins' witness. But I think that's why we have that slightly inconsistent proof. But again, that's proof that can support the jury's verdict as to the first degree murder count. But at its base, again, we have a state law question here regarding the propriety of this instruction. And as this court's well aware, the question of jury instructions almost never rises to the level of a federal constitutional concern. Obviously, there's exception with regard to capital cases and lesser included offenses and things of that nature. But as a general rule, they almost equate to questions of evidentiary significance. They rarely rise to the federal constitutional question. I want to briefly touch on the deference question because this court's correct. Under the Harrington v. Richter decision, the Supreme Court decision, the majority opinion, if you have a summary denial of a habeas claim, that's sufficient to afford deference to the court's opinion. And we take exception to the idea that the state court did not have a rationed opinion. I just briefly looked at our brief where I block quoted the state's opinion with regard to the IAC claim. It references Strickland. It references both prongs of Strickland. It goes on for six pages between the boilerplate for the Strickland analysis and then a we submit that it is a rationed opinion. It does reference both of those prongs. And it decided the question of prejudice on a matter of state law, that being the jury instruction question. Unless there are any further questions, I believe I'm out of time. But again, we'd ask that you reverse the district court's decision with regard to this IAC claim but affirm as to the harmless error testimony claim. Thank you. Thank you both for your argument. The case will be submitted. Would the clerk call the next case, please?